UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMBER VAN RHEEN,

    Plaintiff,                   Civil Action No. 14-11124

      v.                      District Judge Laurie J. Michelson
                                 Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Amerber Van Rheen ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed a Motion for Summary Judgment [Doc. #15]. Defendant did not file a motion for summary judgment, but instead, filed a Motion to Remand to the administrative level for further fact-finding. [Doc. #22]. Plaintiff has not stipulated to a remand for further fact-finding, arguing that she is entitled to a remand for benefits.[1] Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C.

---

[1] However, in her Motion for Summary Judgment, Plaintiff requested either a remand for benefits *or* further fact-finding. *Docket #15, 12-13*.

§636(b)(1)(B).

For the reasons discussed below, I recommend (1) that Defendant's Motion to Remand [Docket #22] be GRANTED and that the case be remanded to for further administrative proceedings, and (2) that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED as to the request for a remand for an award of benefits and DENIED as moot as to the request for a remand for further fact-finding.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on December 3, 2009, alleging disability as of September 1, 2007 (Tr. 218-226). After the initial claim denial, Plaintiff requested an administrative hearing, held on July 6, 2011 in Flint, Michigan. (Tr. 71). On July 28, 2011 Administrative Law Judge ("ALJ") Kevin W. Fallis found Plaintiff not disabled (Tr. 119). On January 19, 2012, the Appeals Council vacated ALJ Fallis' determination, remanding the case for a second hearing (Tr. 124-128). On August 2, 2012, ALJ David Mason, Jr. presided at a second hearing, held in Oak Park, Michigan (Tr. 28). Plaintiff, represented by attorney Jaime Guerrero, testified (Tr. 34-61), as did Vocational Expert ("VE") Lawrence Zatkin (Tr. 62-67). On August 24, 2012, ALJ Mason found that Plaintiff was not disabled. *Id.* (Tr. 21-22). On January 17, 2014, the Appeals Council denied review. *Id.* (Tr.1-3). Plaintiff filed suit in this Court on March 17, 2014.

## BACKGROUND FACTS

Plaintiff, born March 15, 1982, was 30 at the time of ALJ Mason's decision (Tr. 218). She completed ninth grade and worked previously as a nursing home care giver, cashier, stocker, clerk, and housekeeper (Tr. 239, 243). She alleges disability as a result of scoliosis, spine fractures, depression, migraine headaches, and panic attacks (Tr. 238).

**A. Plaintiff's Testimony (August 2, 2012 Hearing)**

Plaintiff offered the following testimony:

She had not worked since September 1, 2007 (Tr. 34). She weighed 99 pounds and was right-handed (Tr. 35). She had not looked for work in the past two years due to body aches (Tr. 35). She last worked as a housekeeper for a motel chain (Tr. 35). She experienced pain while sitting, standing, or walking for extended periods (Tr. 36). Plaintiff, now divorced, was currently on probation on charges of domestic violence because she kicked her former husband "in the leg" (Tr. 37). She currently lived in a rented single-story home with her new fiancé, his two children, her fiancé's father, and her own six-year-old son (Tr. 38-39).

Plaintiff held a driver's license and drove three to four times each week to the grocery store or doctors' appointments (Tr. 40). She drove herself to the hearing (Tr. 40). She did not know how to use a computer, but had one at her home (Tr. 41). She denied hobbies or church attendance (Tr. 41). She smoked a pack-and-a-half of cigarettes each day (Tr. 42). She denied the use of alcohol or street drugs but acknowledged a 10-year addiction to

Vicodin, Persocet, Valium, and Xanax (Tr. 42-43). She still took Vicodin (Tr. 43). She was scheduled to begin substance abuse counseling (Tr. 43).

Plaintiff experienced arm elbow, wrist, knee, hip, and ankle joint pain (Tr. 44). She characterized her back, neck, and shoulder pain as a "six to eight" on a scale of one to ten without medication and "three to four" with medication (Tr. 44). The joint pain was a "six or seven" without medication and a "two" or "three" with (Tr. 45). She coped by pain by reclining (Tr. 45). She reclined twice each day for at least an hour at a time and took frequent naps during the day (Tr. 45). She was unable to dress herself two to three days each week due to depression and pain (Tr. 46). She was unable to get out of bed due to pain approximately two days a week (Tr. 48). She was able to cook "once or twice a week" (Tr. 49). She grocery shopped about once a week but did not perform any housework or yard work (Tr. 49-50). She did not eat breakfast in the morning because she had an "eating disorder" (Tr. 50).

Plaintiff left school before completing ninth grade and had not completed a GED (Tr. 51). She helped her child and stepchildren with their homework but was unable to fill out an online job application (Tr. 51). She noted that the paper applications "were pretty easy . . . to fill out" (Tr. 51-52). She experienced problems lifting a gallon of milk (Tr. 52). Sitting on a bus for long periods caused back pain (Tr. 52). She was able to climb stairs if holding onto a handrail (Tr. 53). She was unable to touch her toes (Tr. 53). Arthritis of the hands caused problems with gripping (Tr. 54). She experienced concentrational problems,

but acknowledged that she did not experience difficulty understanding the ALJ's questions (Tr. 54). She was able to understand the gist of television talk shows (Tr. 55). Plaintiff experienced difficulty carrying out even basic instructions, noting that she generally required a demonstration or added explanation (Tr. 56).

In response to questioning by her attorney, Plaintiff acknowledged that she worked as a cashier at a grocery store for approximately one year, noting that she occasionally miscalculated change (Tr. 56-57). She alleged that while working as a home health aide, she would often forget to give her patients their prescribed medicine (Tr. 58). She denied abusing medication belonging to others (Tr. 59).

### B. Medical Evidence

#### 1. Evidence Relating to Plaintiff's Treatment

January, 1996 school records state that Plaintiff was classified as "Educable Mentally Impaired" (Tr. 319). The same report states that Plaintiff's adaptive behavior was "deficient in communication" (Tr. 320-321). IQ testing showed a verbal IQ of 66; performance of 91, and full scale of 76 (Tr. 322). September, 1997 Individualized Education Program ("IEP") records show that Plaintiff, then in ninth grade, experienced reading comprehension problems (Tr. 313). The records indicate that due to attendance problems, Plaintiff's math skills were "significantly below average" (Tr. 313). Written expression was also deemed "significantly below average" due to attendance problems (Tr. 314). The report recommended obtaining "part time summer employment," noting that Plaintiff's academic

progress had been hampered by poor attendance and a recent shoplifting arrest (Tr. 316).

In August, 2007, Plaintiff reported upper and lower back pain (Tr. 379). May, 2008 treating records state that she complained of back pain and anxiety (Tr. 337). She was diagnosed with nerve root compression of the thoracic spine (Tr. 338, 375). In July, 2008, she complained of depression and back and hip pain (Tr. 370). She noted that her depression was well controlled with Effexor (Tr. 370). In August, 2008, she sought emergency treatment for a headache and arm swelling (Tr. 346). An x-ray of the arm was negative for fractures (Tr. 351). October, 2008 treating notes state that Plaintiff experienced anxiety and that scoliosis caused lower back pain (Tr. 363). She was prescribed Vicodin (Tr. 363).

In October, 2009, Plaintiff reported arthritis of the lower back (Tr. 469). She exhibited an unremarkable gait (Tr. 472). A CT of the abdomen and pelvis was unremarkable (Tr. 485). November, 2009 emergency room records show a normal mood and affect (Tr. 492). Imaging studies of the lumbosacral spine showed the absence of fractures and "well maintained" disc spaces despite the evidence of scoliosis (Tr. 497). Plaintiff sought chiropractic treatment in February, 2010 through May, 2011 for "sharp stabbing" back and shoulder pain (Tr. 526-560). Treating records state a diagnosis of thoracic scoliosis (Tr. 529). June, 2010 emergency treatment records state that Plaintiff injured her right arm/hand (Tr. 507). A physical examination was unremarkable (Tr. 508). Later the same month, Plaintiff again sought emergency treatment for "moderately severe" migraine headaches (Tr. 520). The same month, Plaintiff underwent a cholecystectomy for a gallbladder stone (Tr.

564, 570).

March, 2012 treating notes note Plaintiff's report of ongoing back pain (Tr. 577). An MRI of thoracic spine showed no disc protrusions or spinal stenosis (Tr. 581). An MRI of the cervical spine showed diffuse disc bulge at C5-C6 and C6-C7 but no nerve root involvement (Tr. 582-583). An MRI of the lumbar spine was unremarkable (Tr. 585). June, 2012 records state that Plaintiff planned to begin mental health treatment (Tr. 587). She reported that she kept a journal, wrote poetry, went for rides, and talked to her fiancé (Tr. 588). She stated that she would "stay clean from pills and not take too much . . . pain medication" (Tr. 588). She was assigned a GAF of 60 (Tr. 592).

## 2. Non-Treating Sources

In November, 2008, psychologist Karen Marshall, L.L.P. performed a consultative examination of behalf of the SSA, noting Plaintiff's report of back pain due to "'three compressed fractures'" of the spine causing level "ten" pain and difficulty lifting and bending (Tr. 384). Plaintiff also reported that she had experienced depression since giving birth to her son in 2005 and constant migraine headaches over the past two years (Tr. 384). The examination notes state that Plaintiff admitted that she stopped working as a housekeeper in 2007 because "she was not making enough money" (Tr. 384). She reported that she had been prescribed psychotropic medication but had not received mental health treatment (Tr. 384). Plaintiff reported that she enjoyed watching television, solving crossword puzzles, and spending time were her family (Tr. 385). She denied the ability to

perform household chores (Tr. 385). Dr. Marshall observed that Plaintiff's mental activity was "spontaneous and well organized" with an appropriate affect and good immediate, recent, and past recall (Tr. 385-386). Dr. Marshall concluded that Plaintiff's concentrational abilities did not "appear to be impacted" (Tr. 387). She assigned Plaintiff a GAF of 58[2] (Tr. 387). Dr. Marshall found that Plaintiff would be able to manage her benefit funds (Tr. 387). The following month, Rom Krauciunas, Ph.D. performed a Psychiatric Review Technique, concluding that Plaintiff's mental impairments were "not severe" (Tr. 392). He noted that Plaintiff interacted with friends occasionally and denied problems with written or spoken instructions (Tr. 404).

In January, 2009, Asit Kumar Ray, M.D. performed a consultive physical examination on behalf of the SSA, noting Plaintiff's claims of constant back pain due to scoliosis (Tr. 407). Dr. Ray noted that Plaintiff had not undergone surgery or physical therapy for scoliosis or used a brace (Tr. 407). Plaintiff reported that she quit working due to back pain (Tr. 407). Plaintiff described her migraine headaches as "off and on" (tr. 407).

Dr. Ray observed good posture, a normal gait, and the ability to squat and stand independently (Tr. 408). The range of spinal motion and grip strength studies were essentially normal (Tr. 408-409). Dr. Ray found Plaintiff's claim that she could not tie her shoes "unexplainable" (Tr. 409). He found that she could "perform her usual work related

---

[2] A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

activities without any restrictions" (Tr. 409).

In March, 2010, psychologist Carrie Gleason, LLP noted that Weschsler Adult Intelligence Scale-IV ("WAIS-IV") testing showed a full scale IQ of 67 (Tr. 426). Dr. Gleason observed normal psychomotor activity and unimpaired speech (Tr. 426). Plaintiff reported that she stopped working because she was "not being paid correctly and not getting the hours she needed" (Tr. 430). She reported getting along adequately with others (Tr. 430). Dr. Gleason noted that Plaintiff was "socially appropriate" (Tr. 430). Plaintiff stated that she was able to "pay bills and count money" (Tr. 430). Dr. Gleason found that Plaintiff's "mental abilities to attend to, remember, and carry out instructions" was "moderately impaired" (Tr. 432).

The following month, a Psychiatric Review Technique performed by Dennis Beshara, M.D. noted the presence of mental retardation and affective and anxiety-related disorders (Tr. 434). Under the "'B' Criteria," Dr. Beshara found mild restriction in activities of daily living and social functioning and moderate restriction in concentration, persistence, or pace (Tr. 444). Dr. Beshara found that Plaintiff could perform unskilled work (Tr. 446). Dr. Beshara also completed a Mental Residual Functional Capacity Assessment, finding moderate limitation in the ability to understand, remember, and carry out detailed instructions; maintain activities and work in coordination with others; work without psychologically based disturbances; and respond to workplace changes (Tr. 449). Dr. Beshara reiterated that Plaintiff could perform unskilled work (Tr. 450).

The same month, Clifford M. Buchman, D.O. performed a consultive examination of Plaintiff on behalf of the SSA, noting that Plaintiff arrived at the appointment in a wheelchair (Tr. 456). Dr. Buchman observed that when Plaintiff got out of the wheelchair, she exhibited "a most unusual gait pattern" with "an unpredictable limp for no apparent medical reason. . ." (Tr. 458). He found that Plaintiff had "mild scoliosis which in itself [was] not disabling" (Tr. 458). He stated that "Medically I do not have an understanding of why she is wheelchair bound or why she states she cannot stand or walk" (Tr. 458). He noted that her claim of vertebrae fractures was unsupported by medical documentation (Tr. 458).

### C. Vocational Expert Testimony (August 2, 2012)

VE Lawrence Zatkin testified that his testimony would be consistent with his education, professional experience, and the Dictionary of Occupational Titles ("DOT") unless stated otherwise (Tr. 63). He classified Plaintiff's past relevant work as a home health aide as semiskilled and exertionally medium and the work as a clerk as semiskilled/ light (Tr. 63). ALJ Mason posed the following set of limitations describing a hypothetical individual of Plaintiff's age, education, and work experience:

> This person is limited to light work . . . with occasional ramps or stairs, no ladders, ropes, or scaffolds. This individual can frequently balance, occasionally stoop, crouch, crawl; limited to routine, repetitive tasks; in a work environment that's free of fast-paced production requirements involving only simple, work-related decisions with few if any workplace changes. And this individual would be limited to . . . occasional contact with coworkers, supervisors, and the general public (Tr. 64-65).

The VE testified that given the above limitations, the individual could perform the light,

unskilled work of a tube assembler, plastic roller machine tender, and wire wrapping machine operator, stating that approximately 3,500 such jobs existed in southeast Michigan and 90,000 in the national economy (Tr. 65-66). The VE testified that if the same individual were further limited to lifting 10 pounds occasionally and less than 10 pounds frequently, she could perform the jobs of table worker, gauger, and weight tester with a total of about 3,500 jobs in southeastern Michigan and 40,000 in the national economy (Tr. 66). The VE stated that the inclusion of a sit/stand "at will" option would not change the latter set of job findings (Tr. 66). He found that if Plaintiff were off-task "more than 21 percent" of the workday due to severe back, head, elbow wrist, knee, and neck pain and experienced the medication side effect of sleepiness, all work would be precluded (Tr. 66).

### D. The ALJ's Decision

On August 24, 2012, ALJ Mason found that Plaintiff was not disabled (Tr. 21-22). Citing the transcript, he found that Plaintiff experienced the severe impairments of a "dysthymic disorder; anxiety; and borderline intellectual functioning," but that none of the conditions met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16). Based on the imaging studies showing mostly mild findings, he determined that scoliosis was not a severe impairment, noting that Plaintiff's allegations of difficulty sitting, standing, and walking and her professed inability to get out of bed two days a week were "completely unsubstantiated" by the clinical observations or objective studies (Tr. 15). He found that Plaintiff experienced mild restriction in activities of daily living and social

functioning and moderate restriction in concentration, persistence, or pace (Tr. 17). He found that despite the presence of borderline intellectual functioning, Plaintiff did not meet Listing 12.05C because she did not have "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 17).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for work at all exertional levels with the following additional limitations:

> [C]laimant is limited to work that is simple, routine and repetitive in nature, and free of fast-paced production requirements. Further, this work should only involve simple work-related decision, with few, in any, work place changes, and involve only occasional interaction with the public, supervisors, and co-workers (Tr. 18).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform her past relevant work, she could perform the jobs of tube assembler, plastic roller machine tender, wire wrapping machine operator, table worker, gauger, and weight tester (Tr. 21).

The ALJ discounted the allegations of disability, noting that the claim of medication side effects was not documented in the treating records (Tr. 19). The ALJ noted that Plaintiff was able to follow television talk show subjects and could help her child and stepchildren with their homework (Tr. 19). Despite Plaintiff's allegations of concentrational problems, he observed that she "had no difficulty understanding" the questions posed to her at the hearing (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Current Record Support a Remand for Further Proceedings, but Does Not for an Award of Benefits

In her Motion for Remand, Defendant concedes that a remand for further fact-finding is necessary. *Docket #22.* Defendant, while acknowledging that ALJ Mason's determination contains articulation deficiencies, disputes the contention that Plaintiff has met Listing 12.05C. *Id.*; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05.

"A finding of 'disabled' will be made at the third step if the claimant can ... demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' " *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir.2001) (citing 20 C.F.R. §

404.1520(d)). To establish disability as a result of mental retardation,[3] "a claimant must demonstrate three factors to satisfy the diagnostic description: (1) sub-average intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Commissioner of Social Sec.,* 357 Fed.Appx. 672, 675, 2009 WL 4906909, *2 (6th Cir. December 18, 2009). "Beyond these three factors, a claimant also must satisfy 'any one of the four sets of criteria'" in Listing 12.05. *Id*.; *Foster,* at 354–355. Plaintiff argues that she meets the three threshold requirement and Paragraph C of Listing 12.05 which requires "[a] valid verbal, performance, or full scale IQ of 60 to 69 . . . and a physical or other mental impairment imposing additional and significant work-related limitation of function." § 12.05C.

Although originally requesting either an award of benefits *or* a remand for further fact-finding, *Docket 15*, 12-13, Plaintiff now declines to stipulate to Defendant's offer of a remand for further fact-finding. *Docket #23.* She cites the ALJ's arguably erroneous finding that paragraph C criteria of Listing 12.05 was not met "because . . . claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 17).

Of course, contrary to the ALJ's finding, the January, 1996 IQ testing showed a

---

[3] On August 1, 2013, the term "mental retardation" was replaced with "intellectual disability." *Peterson v. Commissioner*, 552 F. App'x 533, 536 fn. 1 (6th Cir.2014). However, the requirements of the Listing remain substantively unchanged.

verbal IQ of 66 (Tr. 322). Moreover, the ALJ's finding that impairments of dysthymic disorder and anxiety were "severe" at Step Two of the analysis, at a minimum, suggest that they would also create "additional and significant work-related limitation" independent of the borderline intellectual functioning. *See Hutchinson v. Commissioner of Social Sec.,* 2013 WL 4604561, *15 (E.D.Mich. August 29, 2013)(even if a "severe" impairment at Step does not equate with "additional and significant work-related limitation for purposes of Listing 12.05C, "the ALJ should, at least, discuss the distinction between the two"). Thus, the Defendant's motion to remand for further administrative proceedings should be granted.

In terms of an award of benefits, however, even assuming that Plaintiff meets the paragraph C criteria, it unclear from the record whether she meets all three of the *threshold* requirements for disability under Listing 12.05. *See above.* First, Plaintiff's argument that the ALJ's did not discuss the threshold requirements because he believed that she met them is not well taken. The fact that the ALJ neglected to discuss those requirements does not mean that he believed that she met them or that she is automatically entitled to benefits. Given the absence of discussion of the threshold requirements, the proper remedy would be a remand for clarification. *See Hutchinson, supra* at *14 ("the undersigned cannot assess whether a finding that plaintiff does not meet the introductory paragraph [of 12.05] is supported by substantial evidence because there is no finding by the ALJ on this issue").

While the transcript supports a finding of sub-average intellectual functioning and onset before age twenty-two, it is unclear whether she can meet third prong, which requires

a showing of "deficits in adaptive behavior." The school records state that Plaintiff experienced adaptive limitation in the area of "communication" (Tr. 320-321). However, the academic staff found only *one* area of adaptive limitation, whereas Plaintiff must establish at least two areas to establish the "adaptive functioning" requirement of Listing 12.05. To establish deficits in "adaptive functioning", a claimant must show limitations in two of the following areas: "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Hayes, supra,* 357 Fed.Appx. at 677 (citing *DSM–IV–TR* at 49). Assuming that the school report were credited, the finding of one adaptive deficiency, without more, would be insufficient to establish the third prong. Moreover, the current records could support the conclusion that Plaintiff did not experience deficiencies in adaptive functioning, given that she was able to hold several jobs, care for her young child, pay bills, drive, read, solve crossword puzzles, help her child and stepchildren with their homework, and follow the subject of television talk shows (Tr. 35, 40, 51-52, 55). Aside from one incident involving her former husband, she did not experience significant interpersonal conflicts. The Plaintiff's brief argument that the ALJ improperly minimized her allegations of physical limitation (including at one point, claiming that she required the use of a wheelchair) is undermined by recent imaging studies showing, at most, mild abnormalities (Tr. 458, 582-585).          .

      For these reasons, I find that while a remand for further proceedings is necessary,

Plaintiff has not established an "overwhelming" case for benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). Her request for a remand for benefits on this record should be denied.

## CONCLUSION

For these reasons, I recommend that (1) Defendant's Motion to Remand [Docket #22] be GRANTED, remanding the case for further administrative proceedings, and (2) Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED as to the request for a remand for an award of benefits and DENIED as moot as to the request for a remand for further fact-finding.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: February 20, 2015

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 20, 2015, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager